IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANE JONES, #S-12829, <br> and ANDRE COWANS, #M-06116, <br><br> Plaintiffs, <br><br> vs. <br><br> S.A. GODINEZ, ALLEN E. MARTIN, <br> SGT. CAMPBELL, SGT. JOHNSON, <br> OFFICER REED, and <br> CHAPLAIN M. WILLIAMS, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )  CASE NO. 13-cv-919-JPG <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiffs Jones and Cowans are both prisoners incarcerated at the Shawnee Correctional Center ("Shawnee"). On September 6, 2013, they jointly filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, together with two other inmate-Plaintiffs (Timothy Headrick and Kendall Brewer) who have now been dismissed from this case (see Docs. 23 and 29).

This matter is now before the Court for a merits review of the complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

## The Complaint

The first allegation is that on February 1 and August 21, 2013, and on an illegible date in October 2012, Defendant Officer Reed conducted a strip search of Plaintiff Jones and the two dismissed former Plaintiffs (Doc. 1, p. 2). The searches were done in front of Shawnee nursing

staff. By claiming that inmates have a right not to be strip searched "in front of the opposite gender," the allegation implies that at least one of the nursing staff was female (Doc. 1, p. 3). The complaint does not state that Plaintiff Cowans was subjected to any of these strip searches.

Next, Plaintiffs complain about several conditions of their confinement. They are not given proper equipment ("broom, mop, etc.") to "maintain a clean and healthy living environment" (Doc. 1, p. 3). The water from the cold water tap is the same temperature as the hot, forcing Plaintiffs to drink hot or warm water in the summertime. They were housed in segregation cell(s) where they were exposed to dangerous heat indexes. The window was broken, preventing it from being closed to block out the summer heat. Plaintiffs complained about the heat to Defendant Campbell, but he did nothing and told them to "just lay still." *Id*.

On one specific date (August 31, 2013), Plaintiffs were exposed to extremely hot temperatures while on the recreation yard, and were given no water to stay adequately hydrated. They alerted Defendant Johnson to the problem, but he refused to do anything. Also on this date, Plaintiff Jones urinated on himself while on the yard, because he had no access to a toilet for the two-and-one-half hours he was outside. He was unable to alert Defendant Johnson to his need for a bathroom, because the door to the yard was locked. Defendant Johnson would not allow Plaintiff Jones to have a new jumpsuit after this incident (Doc. 1, p. 3). When Plaintiffs were back in the segregation cell(s) at 3:00 p.m. on August 31, they were not given any ice when it was passed out to inmates in general population. Defendant Johnson was notified that Plaintiffs were hot and dehydrated, but he did not provide them with any ice (Doc. 1, p. 4). They note that this problem is "still ongoing." *Id*.

Plaintiff Jones, who is Caucasian, was not allowed by Defendant Williams to have a

Qur'an. Defendant Williams stated the reason he was denied this religious text was because he was "neither Arab nor African-American" (Doc. 1, p. 3).

Finally, Plaintiffs complain that because they are in segregation, they are no longer provided with the $10.00/month stipend that they received while in general population (Doc. 1, p. 4). "Some Plaintiffs are indigent" and without this stipend they cannot afford to purchase hygiene materials "to stay well groomed." *Id*.

Plaintiffs seek monetary damages, declaratory relief, and unspecified injunctive relief (Doc. 1, p. 5).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Accepting the factual allegations as true, the Court finds that Plaintiffs jointly have stated the following cognizable claims for relief, which shall receive further review:

**Count 1:** Eighth Amendment claim against Defendant Campbell, for subjecting Plaintiffs to excessively hot conditions in their segregation cell(s), which had no cold water and a broken window;

**Count 2:** Eighth Amendment claim against Defendant Johnson, for denying Plaintiffs access to water during extremely hot conditions on the recreation yard (on August 31, 2013), and for subjecting them to excessively hot conditions in their segregation cells(s) while refusing to provide them with ice (on an ongoing basis).

In addition, Plaintiff Jones may proceed on the following individual constitutional claims:

**Count 3:** Eighth Amendment claim against Defendant Johnson, for denying Plaintiff Jones access to toilet facilities on August 31, 2013, causing him to urinate on himself, then denying him a change of clothing;

**Count 4:** Claims under the First Amendment, the Fourteenth Amendment/Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1(a)) ("RLUIPA")[1] against Defendant Williams, for denying Plaintiff Jones permission to have a Qur'an because of his race.

The remaining claims shall be dismissed, as discussed below. These include the strip-search claim **(Count 5)**, the claim for lack of cleaning supplies **(Count 6)**, and the claim that Plaintiffs are not being given their monthly stipend and cannot afford personal hygiene supplies **(Count 7)**.

**Count 4** presents one additional concern, because Defendant Williams is not involved in any of the other claims presented herein. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Counts 1, 2, and 3 involve claims against Defendants Campbell and Johnson, and are factually related to one another because they involve the conditions under which Plaintiffs Jones and Cowans were confined. Count 4, however, is factually unrelated to Counts 1-3, and names a different Defendant.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever **Count 4** from this action, and shall open a new case with a newly-assigned case number for that claim. However, Plaintiff Jones shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on that claim or incur the additional filing

---

[1] Although Plaintiff Jones did not invoke the statute in his complaint, the Court has added a RLUIPA claim based on the same facts he alleges to support his constitutional claims. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (advising courts to interpret First Amendment free exercise claims filed by pro se plaintiffs as including a RLUIPA claim).

fee.

**Dismissal of Count 5 – Strip Search (Plaintiff Jones Only)**

Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment. *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013) (group of inmates were strip searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment); *see also Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987).

The factual allegations contained in the instant complaint, however, fail to suggest that the strip searches by Defendant Reed were conducted in such a manner as to violate Plaintiff Jones' constitutional rights. He does not claim that the search involved any harassing, humiliating, or demeaning comments or behavior on the part of any prison staff. Nor does it appear that the search was performed with the intent to degrade Plaintiff Jones, or that it was unnecessary in light of legitimate security concerns. The only objectionable fact he includes was that the search was performed in the view of one or more female nursing employees (Doc. 1, pp. 2-3). This alone does not rise to the level of a constitutional violation.

Prisoners do not have the same privacy rights as they did when they were free. They are subject to observation by prison staff at any time, even when they are in various states of undress. *See Hudson v. Palmer*, 468 U.S. 517, 525-30 (1984) (inmates do not have an

expectation of privacy in their cells, either to be free from searches or from observation by prison staff); *see also Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) ("[P]rivacy is the thing most surely extinguished by a judgment committing someone to prison"). The Seventh Circuit has held that female guards can monitor male inmates who are in the shower or on the toilet, even if this includes observing them while they are naked. *Johnson*, 69 F.3d at 146.

In light of these precedents, the strip searches described herein did not violate Plaintiff Jones' constitutional rights. Accordingly, Count 5 shall be dismissed with prejudice, as will Defendant Reed.

**Dismissal of Count 6 – Cleaning Supplies**

A claim for denial of cleaning supplies may state a constitutional violation when the supplies are requested in an attempt to clean up serious filth or human waste in the prisoner's cell. *See Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007) (prisoner stated constitutional claim when he was deprived of basic sanitation items while he was incarcerated for six days in a cell in which blood and feces smeared the walls, water covered the floor, and the sink and toilet did not work); *Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir.1989) (prisoner's requests for cleaning supplies were denied while he was incarcerated for three days in a cell that was smeared with human defecation and was without running water); *see also Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (inmate stated claim where he had been denied basic cleaning supplies for two weeks during which he was "exposed to a combination of a heavy roach-infestation, filth, and human waste").

However, the instant complaint does not state that Plaintiffs' cell(s) were unusually filthy or presented any health hazards such as described in the above cases. They merely claim that

they were not given "proper" supplies to "maintain a clean and healthy living environment" (Doc. 1, p. 3). This allegation does not suggest a deprivation of constitutional magnitude. Eighth Amendment concerns are triggered only by objectively serious deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). Moreover, Plaintiffs never indicate which, if any, of the named Defendants would have been aware of the lack of cleaning supplies yet failed to take action – which is the required subjective component of an Eighth Amendment conditions claim. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994).

For these reasons, Plaintiffs fail to state a claim upon which relief may be granted in connection with the lack of cleaning materials. Count 6 shall be dismissed with prejudice.

**Dismissal of Count 7- Stipend/Personal Hygiene Items**

There is no constitutional entitlement for prisoners to receive a monetary stipend, or even to be paid if they work at a prison job. *See Vanskike v. Peters*, 974 F.2d 806, 809, 812 (7th Cir. 1992), *cert. denied*, 507 U.S. 928 (1993) (prisoners may be required to work in prison, and the Constitution is not violated by low pay, no pay, or disparities in the hours or rates of pay).

As to the Plaintiffs' desire to have personal hygiene items, no constitutional principle requires that inmates be permitted to own or receive hygiene items for the sake of owning cosmetics. A constitutional right may be implicated only if the deprivation of essential items leaves a prisoner exposed to the elements, or unable to care for his most fundamental needs, thereby placing his health in jeopardy. In *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988), the Seventh Circuit considered an inmate's claim that he was denied toilet paper for five days and denied soap, a toothbrush and toothpaste for ten days, while "he was kept in a filthy, roach-

infested cell." *Id.* at 1234. The Circuit noted that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Id.* at 1235-36. The Circuit then noted that "[a]lthough Harris experienced considerable unpleasantness, he suffered no physical harm," *id.* at 1235, and found that the conditions simply did not rise to the level of an Eighth Amendment violation.

Plaintiffs herein give the Court no reason to believe they ever endured conditions similar to those in *Harris* or that they suffered any harm as a result of lacking personal hygiene items. Indeed, the statement that "some Plaintiffs are indigent" without the $10.00/month stipend does not clearly indicate whether remaining Plaintiffs Jones and Cowans were unable to obtain hygiene supplies. The only concern mentioned in the complaint is that Plaintiffs needed unspecified items so they can "stay well groomed" (Doc. 1, p. 4). This does not violate the Constitution. Accordingly, Count 7 shall also be dismissed with prejudice.

**Dismissal of Defendant Godinez**

Plaintiffs include no factual allegations which suggest that Defendant Godinez had any personal responsibility for the cell conditions or any of the other claims raised herein. He cannot be held liable merely because he is the Director of the Illinois Department of Corrections. The doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Plaintiffs have not alleged that Defendant Godinez is "personally responsible for the deprivation of a constitutional right." *Id.* Accordingly, he shall be dismissed from this action.

Likewise, Plaintiffs have not alleged that Defendant Martin (the Shawnee Warden) had

any knowledge of, or participated in any way in the alleged constitutional deprivations. For this reason, they have not stated any substantive claim against him in connection with Counts 1-4 or the dismissed counts. However, because Plaintiffs are seeking injunctive relief, Defendant Warden Martin shall not be dismissed from the action at this time, but shall remain as a party. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

## Pending Motion

Plaintiffs' motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

## Disposition

**COUNTS 5, 6, and 7** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **GODINEZ** and **REED** are **DISMISSED** from this action with prejudice.

**IT IS HEREBY ORDERED** that Plaintiff Jones' claims against Defendant Williams for race-based denial of religious material (**COUNT 4**), which are unrelated to the conditions of confinement claims in Counts 1, 2, and 3, are **SEVERED** into a new case.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In the new case, the Clerk is **DIRECTED** to file the following documents:

      (1)    This Memorandum and Order
      (2)    The Original Complaint (Doc. 1)
      (3)    Plaintiff Jones' motion to proceed *in forma pauperis* (Doc. 13)

Plaintiff Jones is **ADVISED** that if, for any reason, he does not wish to proceed with the

newly-opened case, he must notify the Court in writing within 35 days (**on or before January 24, 2014**).  Unless Plaintiff Jones notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case.  The amount of his initial partial filing fee payment shall be based on his previously-submitted trust fund records for the six months immediately prior to the date when the claim was filed as part of the original case.  *See* §§ 1915(a)(2) and (b)(1).  Plaintiff should take note that the filing fees for multiple cases cumulate.  *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled in part on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000), *and Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000).  "Otherwise a prisoner could file multiple suits for the price of one . . . ."  *Newlin*, 123 F.3d at 436.  A prisoner who files one suit must remit 20% of his monthly income to the Clerk of the Court until his fees have been paid; a prisoner who files a second suit or an appeal, or who elects to pursue a severed case, must remit 40%; and so on.  *Id*.; *see also* 28 U.S.C. § 1915(b)(2).

Service shall not be ordered on Defendant Williams until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *<u>only claims remaining in this action are COUNTS 1, 2, and 3</u>*.  This case shall now be captioned as: **SHANE JONES and ANDRE COWANS, Plaintiffs, vs. ALLEN E. MARTIN, SGT. CAMPBELL, and SGT. JOHNSON, Defendants.**

**IT IS FURTHER ORDERED** that Defendant **WILLIAMS** is **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1, 2, and 3**, which remain in the instant case, the Clerk of Court shall

prepare for Defendants **MARTIN, CAMPBELL,** and **JOHNSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiffs. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiffs, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiffs shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiffs shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiffs, and the judgment includes the payment of costs under § 1915, Plaintiffs will be required to pay the full amount of the costs, notwithstanding that their applications to proceed *in forma pauperis* have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiffs are **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicants and their attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiffs and remit the balance to Plaintiffs. Local Rule 3.1(c)(1).

Finally, Plaintiffs are **ADVISED** that each of them is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of

this action for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 20, 2013**

*s/ J. Phil Gilbert*
**U.S. District Judge**